JUSTICE RICE
dissenting.
¶25 I do not believe reversal of the Defendant’s conviction is warranted.
¶26 A reading of the transcript reveals another side to this story. There is no question that Mann was uncooperative and potentially dangerous to persons in the courtroom. Prior to Mann’s arrival in court, the District Court was obliged to address security issues which had arisen as a result of Mann’s behavior. Security officials expressed “serious” concerns and requested that the District Court require Mann to be restrained by leg irons and handcuffs, an issue which was resolved by the court approving leg irons only. Sheriffs deputies were asked to sit in the courtroom. These arrangements were made without Mann being present, for obvious security reasons.
¶27 When Mann arrived, he expressed his refusal to wear street clothes, wanting instead to appear in “detention center orange.” He further asserted that he had not received “full representation” from his lawyer, had not received a reasonable bond, was being “railroaded” and that the State was pressuring witnesses to testify against him:
They had nine months, and I think they’re coercing, threatening the victims to make a statement on me. They sit in *483 there and they give her a pop when she’s in the comity jail and they give her a pop and wink at her and tell her that, you know, coerce, and then what happened? She then, what, you were scared? And then she finishes it. I think that’s violation ....
¶28 In response to Mann’s complaints, the District Court immediately took up the matter of defense counsel’s representation and received testimony, concluding therefrom that counsel’s communication and representation had been sufficient. At that point, Mann declared that he wanted to represent himself. Again delaying the start of the trial, the District Court patiently took up the issue of Mann’s self-representation, attempting to advise him of the dangers of doing so and seeking to demonstrate that Mann was not qualified to try his own case, over Mann’s protestations that “[I]t’s all rigged anyway. So I am just going to go with faith. I think this whole thing is rigged.” The District Court’s task was not an easy one:
THE COURT: In other words, what I am telling you is that it’s not a good idea to try to represent yourself. Now, Mr. Keith will listen to anything you want to tell him during the course of the trial.
THE DEFENDANT: He hasn’t listened to this point. I mean-now he wants to listen?
THE COURT: I’ve-we’ve been over this. What I am here to do, Mr. Mann, is give you a fair trial. And that’s what I, that’s-
THE DEFENDANT: That ain’t fair.
THE COURT: And I’m trying to let that, make sure that happens.
THE COURT:... So what we’re trying to do, Mr. Mann, is going forward. I’ve explained to you we’re going to have this trial. Now-
THE DEFENDANT: I want to go by myself.
THE COURT: So, you know, I don’t want you to be in there-
THE DEFENDANT: I won’t.
THE COURT: -making-
THE DEFENDANT: You won’t hear one word. You guys go ahead and do your thing. I just don’t want nobody there, I want to be there by myself.
THE COURT: You’re going to have standby counsel at the very least.
THE DEFENDANT: I refuse. I have a constitutional right to represent myself.
THE COURT: Well, and we’re getting to the point where that’s probably what’s going to happen. But we, I’m going to have *484 standby counsel available to you. And you’ll have these opportunities to question jurors, to cross-examine witnesses.
But I want you to focus on just doing those things that are procedurally proper as we go along. Do you understand that? In other words, I don’t want you to hurt yourself by, a few minutes ago you said in here, okay, I admit that all this, you said all this shit happened, but I didn’t have a gun.
THE DEFENDANT: I don’t care. I don’t care.
¶29 After this difficult session, Mann left, and the District Court stated, “I guess at this point I want to get the observations of counsel about where we are in this.” The discussion that followed was essentially general observations, mostly about the continuing concern about the court’s ability to conduct the trial in light of Mann’s security risks. The bailiff raised concerns about Mann’s unpredictability, and the presence of the deputies was discussed. Questions concerning Mann’s trying the case in leg irons, where defense counsel would sit, the extent of Mann’s access to the courtroom and what to do if Mann got out of control were raised and discussed. Defense counsel observed that Mann “would do exactly what he did in here [earlier], is break in every time I tried to explain something....” The discussion then turned to the handling of evidentiary matters on which there was no disagreement. Finally, comments were made regarding Mann’s self-representation, but were not extensive, and the District Court made no statements in that regard.
¶30 Mann was properly excluded from the courtroom for purposes of discussing the security issues he presented to the conduct of the trial. “[T]rial judges confronted with disruptive ... defendants must be given sufficient discretion to meet the circumstances of each case.” Illinois v. Allen (1970), 397 U.S. 337, 343, 90 S.Ct. 1057, 1061, 25 L.Ed.2d 353, 359. The discussion of the other issues was general in nature, some of it a repeat of the discussion in Mann’s presence. True, some comments were made about Mann in his absence by his counsel, but these were of little moment when compared to the substantial discussion about the security risks Mann’s behavior presented. In that light, any prejudice suffered by Mann by his absence from this meeting was de minimus, and I would affirm his conviction pursuant to State v. Kennedy.